IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Mark Sinkler, <br><br> Plaintiff, <br><br> v. <br><br> Coca-Cola Consolidated, Inc., <br><br> Defendant. | C/A No.: <br><br><br> COMPLAINT <br> **Jury Trial Requested** |

## INTRODUCTION

Plaintiff, Mark Sinkler, by and through his undersigned counsel, brings this action against Defendant Coca-Cola Consolidated, Inc. and asserts claims for Race Discrimination, Sex Discrimination, and for maintaining a Racially and Sexually Hostile Work Environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., as well as claims for Breach of Contract and Breach of Contract Accompanied by Fraudulent Intent, based upon the following allegations.

## ADMINSTRATIVE CHARGE

1. Plaintiff has exhausted all administrative remedies and prerequisites prior to filing this lawsuit, including timeliness, deferral, and all other jurisdictional requirements necessary for the maintenance of this action, as described below:

    a. Plaintiff timely filed a Charge with the Equal Employment Opportunity Commission ("EEOC") on December 4, 2024.

    b. Plaintiff received a Notice of Right to Sue from the EEOC on August 27, 2025.

    c. Plaintiff timely filed this action within (90) days of the date on which he received his Notice of Right to Sue as described in Paragraph 1 (b)

## PARTIES

2. Plaintiff Mark Sinkler is an African-American male residing in Lugoff, South Carolina and was employed by Defendant Coca-Cola Consolidated, Inc. within this District at all relevant times.

3. Defendant Coca-Cola Consolidated, Inc. ("Defendant CCCI") is the largest independent bottler of Coca-Cola products in the United States, headquartered in Charlotte, North Carolina.

4. Defendant CCCI manufactures, packages, sells, and distributes more than 300 beverage brands across 14 states, including within this District.

5. Defendant CCCI employs thousands of workers and maintains distribution centers, delivery routes, supervisors, managers, and Human Resource (HR) personnel in this jurisdiction.

6. At all relevant times, Defendant CCCI employed Plaintiff and controlled the conditions of his employment, including supervision, discipline, evaluation, and termination.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, as this action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

8. This Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367(a).

9. Venue is proper in the United States District Court for the District of South Carolina, Columbia Division, pursuant to 28 U.S.C. § 1391(b), because the events giving rise to the claim occurred in this District where Plaintiff was employed and where Defendant CCCI maintains substantial business operations.

**FACTS**

10. Plaintiff, Mark Sinkler, is a 37-year-old African American male who was employed with Defendant CCCI from July 7, 2020, until his unlawful termination on February 23, 2024.

11. At the outset of his employment, Plaintiff and Defendant CCCI entered into an employment relationship, governed by Defendant CCCI's written policies, handbooks, and mandatory workplace standards, which expressly included protections against discrimination and harassment on the basis of race and sex, as well as policies requiring fair and consistent application of disciplinary procedures and related procedural safeguards. Plaintiff relied on these policies as conditions of his employment.

12. On July 7, 2020, Defendant CCCI hired Plaintiff as a Delivery Driver with an assigned regular delivery route. The safe operation of commercial vehicles was an essential function of his job.

13. From the start of his employment, Plaintiff consistently fulfilled all job responsibilities professionally, reliably, and without incident.

14. In November 2020, after obtaining his Commercial Driver's License (CDL), Plaintiff was promoted to Route Specialist and Assistant Supervisor, demonstrating his strong performance, dedication, and continued advancement within the company.

15. Despite Plaintiff's demonstrated performance and advancement, he began experiencing differential treatment and a hostile work environment on the basis of his race and sex, inconsistencies in workplace policies and procedures, and targeted actions that adversely affected his work assignments and employment records.

16. In May 2023, Defendant CCCI changed Plaintiff's work schedule in the company's system without informing him. As a result, the system incorrectly marked Plaintiff as "tardy," despite his timely arrival according to his assigned duties.

17. Furthermore, in May 2023, Plaintiff was assigned cashier duties that required him to report later than usual. Defendant CCCI did not maintain any written policy or handbook directive prescribing a designated start time for Plaintiff's performance of these duties.

18. On June 7, 2023, Defendant CCCI issued Plaintiff a written coaching notice alleging attendance issues arising from May 2023, even though Plaintiff was not subject to any designated arrival time and the reported tardies were attributable to a system error. This discipline was baseless and was not imposed on similarly situated employees of other races.

19. Specifically, Plaintiff's supervisor, Jody Pieters ("Mr. Pieters"), a Caucasian male, repeatedly arrived late to work during the relevant time period but faced no disciplinary action, highlighting the disparate treatment Plaintiff experienced because of his race.

20. Despite the inconsistent enforcement of workplace rules, Plaintiff continued to fulfill his duties and promptly communicated any scheduling conflicts to his supervisor.

21. On or about June 19, 2023, Plaintiff notified Mr. Pieters that he had an emergency dental appointment requiring immediate medical attention.

22. On June 21, 2023, Plaintiff provided Mr. Pieters with a Doctor's Note confirming that he had attended the emergency appointment and had been prescribed medication that prohibited him from driving, an essential function of his job.

23. Despite this medically documented restriction, on June 21, 2023, Defendant CCCI issued Plaintiff a Step 2 Corrective Action related to the medical absence, penalizing him for circumstances beyond his control. This treatment was inconsistent with the handling of similar absences by other employees of different races and/or sexes.

24. On or about October 16, 2023, while making a delivery to a retail location, Plaintiff informed Defendant CCCI's Branch Manager, Natalie Hill ("Ms. Hill"), a Caucasian female, that the customer had refused the delivery and asked that he pick up the return items. In accordance with Defendant CCCI's policy at that time, Plaintiff did not pick up the return items.

25. Subsequently, Ms. Hill confirmed to Plaintiff that in refusing to pick up the return items, he acted in accordance with Defendant CCCI's policy and handled the situation properly.

26. To Plaintiff's dismay, later that same day, Ms. Hill and Supervisor Mr. Pieters presented Plaintiff with a write-up alleging unprofessional conduct based on the same customer complaint, directly contradicting Ms. Hill's earlier statement. This disciplinary action was pretextual, as it was not based on Plaintiff's actual conduct but was instead a deliberately misleading means to justify adverse treatment.

27. Immediately following, Plaintiff requested video evidence of the alleged misconduct, but no video or other corroborating proof was provided.

28. On October 16, 2023, Ms. Hill stated to Plaintiff, **"Unfortunately, Mr. Sinkler, this does not work out in your favor,"** indicating that the disciplinary action was predetermined and lacked a neutral evaluation of the circumstances.

29. Shortly thereafter, Plaintiff requested an opportunity to speak directly with the customer regarding the allegations, but this request was denied.

30. These repeated adverse actions, including unjustified coaching, Step 2 Corrective Action, and unwarranted write-ups, were among numerous other actions of Defendant CCCI which demonstrate a clear and ongoing pattern of discriminatory treatment during Plaintiff's employment.

31. Plaintiff personally observed a deterioration in the work environment for African American employees under Ms. Hill's leadership, including inconsistent enforcement of policies, disparate discipline, and harsher treatment of African American management and line staff.

32. Collectively, Defendant CCCI's actions placed Plaintiff in a position where his conduct at work was subject to heavy scrutiny on a weekly basis, creating a racially and sexually hostile and discriminatory work environment. Each of these disciplinary measures was taken without sound evidence or legitimate justification and directly contrasts with how similarly situated employees of different races and sexes, including Caucasian supervisors and staff, were treated.

33. Moreover, on or about February 15, 2024, Plaintiff was dispatched by Defendant CCCI to the Incarnation Lutheran Church in Columbia, South Carolina, to retrieve black stacking crates belonging to CCCI that had been left there since October 2023. Plaintiff complied with the dispatch.

34. Upon information and belief, Mr. Pieters, a Caucasian male supervisor, had been responsible for retrieving the crates months earlier, though failed to do so, without receiving any disciplinary action. This disparity further illustrates Defendant CCCI's propensity to discipline African American employees more harshly than Caucasian management and staff.

35. On February 15, 2024, Defendant CCCI alleged that while Plaintiff was attempting to back the company truck into the church driveway, he struck a vehicle belonging to the church pastor, a Caucasian female, causing damage to the rear quarter panel.

36. Prior to being notified, Plaintiff had not observed any accident, damage, or other occurrence that could give rise to such a claim and had no knowledge that any vehicle had allegedly been struck.

37. That same day, Mr. Pieters instructed Plaintiff to contact the church pastor regarding the alleged damage. When Plaintiff complied, the pastor stated that she was no longer on the premises, had already returned home, and confirmed that the police had not been called to the scene. The absence of any timely report or documented damage following the alleged incident undermines the occurrence of the alleged accident and any suggestion that Plaintiff was responsible for it.

38. The pastor allowed approximately six hours to elapse before notifying Defendant CCCI of the alleged incident and did not provide any substantiated evidence at the time she made her report.

39. Plaintiff informed Defendant CCCI that he did not strike the vehicle or any other object.

40. At no time surrounding the alleged February 15, 2024, incident did Plaintiff admit to being distracted, on his phone, or otherwise negligent in the operation of the company vehicle.

41. On February 16, 2024, Mr. Pieters met with the church pastor without Plaintiff present, depriving Plaintiff of the opportunity to provide his account firsthand, challenge any inaccuracies, present evidence on his behalf, or otherwise defend himself against the allegations.

42. During this meeting, Mr. Pieters claimed that the pastor had shown him Ring camera footage allegedly depicting the incident but, contrastingly, also reported that the pastor confirmed Plaintiff did not hit her vehicle.

43. Upon information and belief, the church property was equipped with exterior video cameras capable of capturing activity in the parking area; however, despite Plaintiff's repeated requests, no such footage was produced to corroborate Mr. Pieters' narrative.

44. Several hours later, Mr. Pieters contacted the pastor again and asserted, without any objective basis, that Plaintiff's truck was the only CCCI vehicle present at the scene, appearing to influence or shape her subsequent account.

45. On or about February 22, 2024, Plaintiff reviewed interior truck camera footage with Ms. Hill, Mr. Pieters, and two other CCCI employees. The interior footage was limited but demonstrated that Plaintiff acted appropriately and in accordance with company policies.

46. Following this review, Plaintiff requested exterior truck camera footage, which would have provided a complete and accurate depiction of the alleged incident. At no prior time had anyone indicated that the truck, the camera, or any other related function was malfunctioning. It is also beneficial to note that company trucks are required to be maintained in proper working order and meet operational standards.

47. Approximately one week later, on or about February 28, 2024, Defendant CCCI's Safety Manager, Darren Hall, told Plaintiff that he was having difficulty retrieving the exterior

truck footage, a delay that occurred at a time advantageous to Defendant CCCI and which hindered Plaintiff's ability to refute the allegation.

48. In early March 2024, Defendant CCCI's Human Resources Officer informed Plaintiff that the exterior camera on the truck was allegedly "broken," contradicting earlier statements suggesting the footage existed.

49. At all relevant times during Plaintiff's employment, Plaintiff maintained a clean CDL record with no prior violations and had a longstanding history of safe driving.

50. Throughout all relevant dates, Defendant CCCI failed to produce several requested pieces of evidence, including the interior camera footage already reviewed and the exterior camera footage, which was initially claimed to exist but was later described as inaccessible and ultimately reported as "broken."

51. Despite the lack of substantiated evidence, the contradictions in management's statements, and Plaintiff's clear record, Defendant CCCI credited the uncorroborated statements of a Caucasian female non-employee over Plaintiff's account. This biased and unjustified decision ultimately led to Plaintiff's termination on February 23, 2024.

52. Taken together, these actions, including inconsistent and partial application of disciplinary procedures, denial of procedural safeguards, reliance on unverified allegations, and disparate treatment, contributed to a racially and sexually hostile work environment and demonstrate Defendant CCCI's failure to uphold its written policies and standards, giving rise to Plaintiff's claims as set forth below.

## **FIRST CAUSE OF ACTION:**

*RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED*

*42 U.S.C. § 2000e et seq.*

**(Against Defendant Coca-Cola Consolidated, Inc.)**

53. Plaintiff reiterates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

54. Plaintiff is African-American and a member of a protected class under Title VII.

55. Plaintiff performed his duties in a competent and professional manner from July 7, 2020, through his termination in 2024.

56. Plaintiff had no CDL violations, no safety incidents, and a proven record warranting his November 2020 promotion.

57. Defendant CCCI subjected Plaintiff to materially adverse employment actions, including but not limited to:

    a. unwarranted coaching and disciplinary notices;

    b. Step 2 Corrective Action issued despite a medically documented driving restriction;

    c. an unjustified write-up on October 16, 2023;

    d. heightened scrutiny and selective enforcement of workplace policies;

    e. false or unsupported allegations regarding an accident on February 15, 2024;

    f. refusal to provide available or requested evidence related to the allegations; and

    g. termination on February 23, 2024.

58. Caucasian employees who committed comparable or more serious alleged misconduct, including management-level employees, were not: written up, subjected to baseless investigations, denied evidence, punished, or terminated.

59. For example, Plaintiff's supervisor Jody Pieters (Caucasian male) frequently arrived late but was never disciplined, while Plaintiff was disciplined for "tardies" created by Defendant CCCI's own system error.

60. Moreover, Defendant CCCI credited unsubstantiated allegations from Caucasian individuals, including a non-employee pastor and Defendant CCCI supervisors, over Plaintiff's account, despite Plaintiff's long history of professionalism.

61. Furthermore, Caucasian employees involved in customer complaints were allowed to speak to customers, review footage, and provide explanations—privileges that were denied to Plaintiff.

62. Defendant CCCI's actions reflect a pattern of disparate treatment based on race, creating a discriminatory work environment and subjecting Plaintiff to harsher discipline and inconsistent policy enforcement.

63. Defendant CCCI's decisions to discipline Plaintiff, impose repeated adverse actions, and ultimately terminate his employment were motivated, in whole or in part, by his race.

64. As a direct and proximate result of Defendant's unlawful race discrimination, Plaintiff has suffered loss of income, benefits, emotional distress, humiliation, and other damages.

65. Defendant CCCI's conduct was willful, wanton, and in reckless disregard of Plaintiff's federally protected rights, entitling Plaintiff to compensatory and punitive damages, attorneys' fees, costs, and all other relief available under Title VII.

**SECOND CAUSE OF ACTION:**
*SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED*
*42 U.S.C. § 2000e et seq.*
**(Against Defendant Coca-Cola Consolidated, Inc.)**

66. Plaintiff reiterates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

67. Plaintiff is male and therefore a member of a protected class under Title VII.

68. Plaintiff successfully met the expectations of his job and earned a promotion in November 2020 based on performance.

69. During his employment, Plaintiff experienced multiple adverse employment actions, including: escalated discipline; false write-ups; denial of access to evidence; harsher enforcement of policies; investigation of the February 15, 2024, alleged accident conducted in a biased and pretextual manner; and termination.

70. During his employment, Plaintiff was subjected to disparate treatment in the investigation and discipline of workplace incidents. On October 16, 2023, Branch Manager Natalie Hill (Caucasian female) intentionally misled Plaintiff regarding the propriety of his actions by first confirming that he had followed company policy concerning a customer return, then disciplining him for the same conduct. This deliberate misleading conduct demonstrates a purposeful decision to treat Plaintiff differently based on his sex and to create a pretext for adverse employment action.

71. Plaintiff was denied access to evidence, the ability to speak with the customer, and other procedural safeguards afforded to female employees in similar situations.

72. Defendant CCCI's reliance on unverified accusations, refusal to provide exculpatory evidence, and deviation from its usual practices demonstrates discriminatory intent.

73. Supervisors used minor or nonexistent issues as a pretext to discipline, undermine, and ultimately terminate Plaintiff because he is male.

74. Plaintiff's sex was a motivating factor in Defendant CCCI's decisions to discipline him, subject him to repeated adverse actions, and ultimately terminate his employment.

75. As a direct and proximate result of Defendant CCCI's unlawful sex discrimination, Plaintiff has suffered loss of income, benefits, emotional distress, humiliation, and other damages.

76. Defendant CCCI's conduct was willful, wanton, and in reckless disregard of Plaintiff's federally protected rights, entitling Plaintiff to compensatory and punitive damages, attorneys' fees, costs, and all other relief available under Title VII.

### THIRD CAUSE OF ACTION:
### *RACIALLY AND SEXUALLY HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED*
### *42 U.S.C. § 2000e et seq.*
### (Against Defendant Coca-Cola Consolidated, Inc.)

77. Plaintiff reiterates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

78. Plaintiff is an African American male and a member of classes protected under Title VII.

79. Defendant CCCI, as Plaintiff's employer, was bound by Title VII at all relevant times.

80. During Plaintiff's employment, particularly under Branch Manager Natalie Hill and Supervisor Jody Pieters, Plaintiff was subjected to harassment, heightened scrutiny, disparate discipline, and degrading treatment based on race and sex.

81. Defendant CCCI imposed unwarranted discipline, including unjustified coaching, incorrect tardiness accusations caused by Defendant CCCI's system error, a Step 2 Corrective Action for a medically documented emergency, and a contradictory write-up in October 2023, while similarly situated Caucasian employees were not disciplined for comparable conduct.

82. Plaintiff experienced escalating hostility, including dismissive treatment, biased statements, and preferential credibility given to Caucasian employees and non-employees, despite Plaintiff's positive record.

83. The February 2024 alleged church incident further illustrates the hostile environment: management accepted unverified accusations from a Caucasian female non-employee over Plaintiff's statements, excluded Plaintiff from key investigatory steps, withheld video evidence, and altered explanations regarding footage availability.

84. The repeated unwarranted discipline, disparate treatment, and exclusion from investigations created an abusive, intimidating, and degrading work environment.

85. Defendant CCCI knew or should have known of the hostile environment because it was perpetrated by Plaintiff's supervisors and higher management, yet failed to take prompt or effective corrective action.

86. As a direct result of Defendant CCCI's conduct, Plaintiff suffered emotional distress, reputational harm, and other compensatory damages.

87. Defendant CCCI acted willfully, intentionally, and with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

88. Plaintiff is entitled to all relief under Title VII, including reinstatement or front pay, back pay, compensatory and punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

### FOURTH CAUSE OF ACTION:
*BREACH OF CONTRACT*
**(Against Defendant Coca-Cola Consolidated, Inc.)**

89. Plaintiff reiterates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

90. At the outset of his employment, Plaintiff and Defendant CCCI entered into an employment relationship governed by Defendant CCCI's written policies, handbooks, and mandatory workplace standards. These policies included protections against discrimination and harassment on the basis of race and sex, as well as requirements for fair and consistent application of disciplinary procedures and related procedural safeguards.

91. Plaintiff reasonably relied on these policies and standards as material terms of his employment.

92. Defendant CCCI breached its contractual obligations by:

    a. failing to apply disciplinary procedures consistently;

    b. denying Plaintiff access to evidence and the ability to respond to allegations;

    c. misleading Plaintiff regarding compliance with company policy;

    d. relying on unverified accusations in imposing discipline;

    e. subjecting Plaintiff to a racially and sexually hostile work environment; and

    f. terminating Plaintiff in violation of Defendant CCCI's policies and procedures.

93. As a direct and proximate result of Defendant CCCI's fraudulent conduct, Plaintiff has suffered economic damages, including loss of employment benefits, emotional distress, and reputational harm.

94. Plaintiff is entitled to all remedies available under South Carolina law for breach of contract with fraudulent intent, including punitive damages, consequential damages, attorneys' fees, costs, and other relief.

## **FIFTH CAUSE OF ACTION:**
### *BREACH OF CONTRACT ACCOMPANIED BY FRADULENT INTENT*
**(Against Defendant Coca-Cola Consolidated, Inc.)**

95. Plaintiff reiterates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

96. At the outset of his employment, Plaintiff and Defendant CCCI entered into an employment relationship governed by Defendant CCCI's written policies, handbooks, and mandatory workplace standards. These policies expressly included protections against discrimination and harassment on the basis of race and sex, as well as requirements for fair and consistent application of disciplinary procedures and related procedural safeguards, including the right to an impartial review, access to evidence, and the opportunity to respond to allegations.

97. Plaintiff reasonably relied on these policies and standards as material terms of his employment.

98. Defendant CCCI intentionally and knowingly breached these contractual obligations by:

    a. deliberately misleading Plaintiff regarding compliance with company policy, including misrepresentations by Branch Manager Natalie Hill about the propriety of his actions;

    b. issuing pretextual disciplinary actions and write-ups based on unverified accusations;

    c. selectively enforcing policies to Plaintiff's detriment while excusing similar conduct by employees of different races and sexes

    d. subjecting Plaintiff to a racially and sexually hostile work environment; and

    e. terminating Plaintiff in a manner inconsistent with Defendant CCCI's written policies and standards.

99. Defendant CCCI's conduct as described above was deliberate, malicious, and undertaken with fraudulent intent, designed to deceive Plaintiff, induce reliance on its policies, and justify adverse employment actions.

100. As a direct and proximate result of Defendant CCCI's fraudulent breach, Plaintiff has suffered economic damages, loss of employment benefits, emotional distress, and other compensable losses in an amount to be proven at trial.

101. Plaintiff is entitled to all remedies available under South Carolina law for breach of contract with fraudulent intent, including compensatory and punitive damages, attorneys' fees, costs, and other relief.

## PRAYER FOR RELIEF

102. **WHEREFORE**, Plaintiff prays that this Honorable Court:

    a. Declare the actions complained of herein illegal;

    b. Enter judgment in favor of Plaintiff and against Defendant CCCI for all causes of action herein alleged, awarding actual, compensatory, special, and punitive damages in a fair and reasonable amount;

    c. Issue an injunction enjoining Defendant CCCI, its Agents, Employees, Successors, Attorneys and all those acting in concert or participation with it, and at its direction, from engaging in the unlawful practices set forth herein and any other practices shown to be in violation of Title VII. (Race and Sex Discrimination/ Racially and Sexually Hostile Work Environment), Breach of

      Contract and Breach of Contract Accompanied by Fraudulent Intent, or common laws of the State of South Carolina;

d. Award Plaintiff damages including: physical and mental anguish, physical and emotional pain and suffering, harm to Plaintiff's economic opportunities (present and future), any back pay, front pay and future earnings with cost of living adjustments, prejudgment interest, fringe and retirement benefits;

e. Award Plaintiff his costs and expenses in this action, including reasonable Attorney's fees and other litigation expenses; and

f. Grant such other and further relief as the Court deems just and proper to afford complete relief to Plaintiff.

                Respectfully Submitted,

                __s/Donald Gist_____
                Donald Gist, Fed ID 7178
                GIST LAW FIRM, P.A.
                4400 North Main Street
                Columbia, South Carolina 29203
                Tel. (803) 771-8007
                Fax (803) 771-0063
                Email: dtommygist@yahoo.com

                ***Attorney for Plaintiff***

November 25, 2025